IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:11-CV-68-D

| | | |
|---|---|---|
| DONNA COLLIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Donna Collier ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 25, 30). Both parties submitted a memorandum in support of their respective motions and plaintiff filed a reply (D.E. 26, 31, 33). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 32). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I.      **BACKGROUND**

A.      **Case History**

Plaintiff filed an application for DIB on 19 March 2007 alleging a disability onset date of 1 August 2005. Transcript of Proceedings ("Tr.") 20. Her application was denied initially and again upon reconsideration, and a request for hearing was timely filed. Tr. 20. On 11 March 2010, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 28-56. The

ALJ issued a decision denying plaintiff's claim on 10 June 2010. Tr. 20-27. Plaintiff timely requested review by the Appeals Council. Tr. 8. The Appeals Council denied the request for review on 4 February 2011. Tr. 1-5. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 31 March 2011, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 3); Compl. (D.E. 4)).

**B.      Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A person is under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* (d)(2)(A).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination

of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 58 years old on the alleged onset date of disability and 63 years old on the date of the administrative hearing. *See* Tr. 33-34. She has a high school education and three years of college. Tr. 34.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of 1 August 2005 through 30 September 2006, her date last insured ("relevant period"). Tr. 22 ¶ 2. At step two, the ALJ found that during this period plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): fibromyalgia and degenerative disc disease. Tr. 22 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 23 ¶ 4.

The ALJ determined that during the relevant period plaintiff had the RFC to perform light work,[1] but with only occasional stooping and crouching. Tr. 24 ¶ 5. At step four, a vocational expert testified that plaintiff's prior three jobs—executive director, office manager, and sales attendant—were defined under the *Dictionary of Occupational Titles* ("*DOT*") as being at no more than the light exertional level, although plaintiff actually performed two of them— executive director and sales attendant—at the medium exertional level. Tr. 52. Based on this testimony and her determination that plaintiff had the RFC to perform light work, the ALJ found at step four that during the relevant period plaintiff was capable of performing past relevant work as an executive director, office manager, and sales attendant. Tr. 27 ¶ 6. The ALJ accordingly found plaintiff not disabled during this period. Tr. 27 ¶ 7.

## II.   DISCUSSION

### A.      Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence

---

[1] The ALJ found specifically that plaintiff was able to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and stand, walk, and sit for 6 hours in an 8-hour day. Tr. 24 ¶ 5.

in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g.*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible

without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## B.    Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed because the ALJ failed to: (1) adequately consider the severity of plaintiff's mental impairments; (2) properly assess various medical source opinions; (3) evaluate her credibility appropriately; (4) properly determine plaintiff's RFC; and (5) properly address plaintiff's past relevant work.

## C.    Nonseverity Determination on Plaintiff's Mental Impairments

In her decision, the ALJ acknowledged that plaintiff had medically determinable mental impairments[2] of communication disorder and adjustment disorder with depressed mood. Tr. 23 ¶ 3. She found, however, that these mental impairments, taken singly or in combination, did not cause "more than minimal limitation in the claimant's ability to perform basic mental work activities prior to the date last insured and were therefore non-severe at that time." Tr. 23 ¶ 3. Plaintiff contends that the ALJ's decision shows the ALJ did not correctly evaluate the severity of her mental impairments. The court disagrees.

An impairment is deemed severe if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,

---

[2] Having found plaintiff to have medically determinable mental impairments, the Regulations required the ALJ to follow a special technique to evaluate such impairments, as described in 20 C.F.R. § 404.1520a(b)-(e). 20 C.F.R. § 404.1520a(a). Under the special technique, an ALJ is to rate the degree of a claimant's functional limitation in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.* The ALJ here did apply the special technique and make the requisite findings. *See* Tr. 23 ¶ 3.

irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th

Cir. 1984) (internal quotation marks omitted).

The ALJ correctly noted the lack of evidence *prior* to her date last insured, 30 September

2006, showing that her mental impairments were severe:

> [W]hile there was some indication of treatment for emotional instability in
> February 2007, the claimant's depression was not diagnosed until March 2007, by
> her treating physician. (Exhibit 12F). There is no indication in the medical
> evidence of record that the claimant had communication problems prior to her
> date last insured, and nothing indicates that she received treatment for
> concentration or memory problems prior to that date.

Tr. 25 ¶ 5.

The February 2007 record referred to by the ALJ is the note of a 28 February 2007 visit

by plaintiff to primary-care physician Mary Katherine Rudyk, M.D., Board-certified in internal

medicine and gerontology, whom plaintiff began seeing on 7 February 2007 for treatment of her

arthritis and chronic fatigue and pain. Tr. 196, 201, 284, 368. In the note, Dr. Rudyk reported

that plaintiff seemed to "have some underlying emotional instability probably because of her

chronic pain." Tr. 201. This initial evidence comes almost five full months after plaintiff's last

date insured. As the ALJ noted, "no diagnosis was made at that time and there was no effort

made to prescribe medication or refer to psychiatry." Tr. 26 ¶ 5. The medication for the

depression, Cymbalta, did not begin until almost a month later, on 23 March 2007. Tr. 203. In a

12 December 2007 letter to Disability Determination Services ("DDS"),[3] Dr. Rudyk herself

stated that plaintiff "has no other memory impairments or limitations" after describing her

depression, pain, and other physical problems. Tr. 316.

---

[3] DDS is a North Carolina state agency that makes decisions on applications for disability under the Social Security
program. *See* N.C. Div. of Vocational Rehab. Serv., http://www.ncdhhs.gov/dvrs/pwd/dds.htm (last visited 22 June
2012).

The ALJ's mental impairment severity determination also finds support in the note by Ben Wall, M.D. of Coastal Rehabilitation Medicine Associates regarding plaintiff's office visit on 6 December 2005. Tr. 280-82. As the ALJ observed, Dr. Wall found on that date that plaintiff had "[n]o short term memory deficits." Tr. 26 ¶ 5; 281. Dr. Wall made the same finding in the note on a 17 February 2006 office visit with plaintiff. Tr. 268.

In addition, nonexamining consulting DDS psychologist Steven E. Salmony, Ph.D. found in a Psychiatric Review Technique form, which was dated 27 June 2007 and covered the relevant period, that there was insufficient evidence to establish whether plaintiff had a mental impairment. Tr. 229. In a report dated 13 July 2007, nonexamining consulting DDS physician Richard L. Gann, M.D. concurred in this assessment. Tr. 243. The ALJ stated that he gave "significant weight" to the opinions of these and the other nonexamining DDS consultants. Tr. 26 ¶ 5.

Plaintiff contends that Social Security Ruling 83-20, 1983 WL 31249 (1983) required that the ALJ call on the services of a medical advisor to determine the onset on her mental impairments. But Social Security Ruling 83-20 requires a medical advisor only when the medical evidence in the record is ambiguous and the onset date must be inferred. Soc. Sec. R. 83-20, 1983 WL 31249, at *3; *Robertson v. Astrue,* No. 7:11–cv–116, 2012 WL 1203507, at *2-3 (W.D. Va. 10 Apr. 2012) ("[T]he ALJ need only consult a medical advisor where the medical evidence in the record is ambiguous."); *Hall v. Astrue*, No. 2:11cv24, 2012 WL 1313242, at *4 (W.D.N.C. 26 Mar. 2012) (holding that Soc. Sec. R. 83–20 applies only when the ALJ determines that the claimant is disabled and "because the ALJ in this case found that Plaintiff was not disabled, there was no need for the ALJ to determine the onset date of the disability and, thus, [Soc. Sec. R.] 83–20 did not require the ALJ to obtain a medical expert to provide an

opinion as to a disability onset date"). Here, the medical evidence is not ambiguous about the nonexistence of plaintiff's mental impairments prior to her last date insured, and there was no need to identify the precise date of onset.

Moreover, irrespective of the onset date, there is substantial evidence that plaintiff's depression was adequately controlled by medication. For example, on 11 December 2007, plaintiff told Dr. Rudyk that she was doing "significantly better" on an increased dosage of Cymbalta. Tr. 337. In four visits with Dr. Rudyk over the course of July and August 2008, plaintiff did not complain of depression and she continued on Cymbalta at a somewhat lower dose than previously. Tr. 351, 353, 355, 356-67. In the note on plaintiff's 25 February 2009 visit to Sunil Arora, M.D., a pain specialist, Dr. Arora states that there is "no evidence of major depression." Tr. 367. The fact that plaintiff's depression appears to have been controllable by medication provides further support for the ALJ's finding that this aspect of her mental impairments was nonsevere during the relevant period.[4] *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling.").

For these reasons, the court concludes that the ALJ's nonseverity determination is supported by substantial evidence and based on applicable legal standards. The court accordingly rejects plaintiff's challenge to this portion of the ALJ's decision.

---

[4] In contrast to the evidence relating to the relevant period, a consulting DDS psychological examiner, Henry F. Tonn, M.S., stated in a report dated 19 June 2007 that "[t]his examiner does not see how this person can possibly work *at the present time* given the fact that her communication skills are so severely hampered." Tr. 226 (emphasis added).

**D.     Evaluation of Medical Source Opinions**

Plaintiff also challenges the weight given by the ALJ to the opinions of Dr. Rudyk and two state agency medical consultants.  These opinions are addressed separately below after a review of applicable legal standards.

**1.     Applicable Legal Standards**

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2)[5]; *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996).  The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(d)(2).  If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the provider.  *Id.* § 404.1527(d)(2)-(6).  An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

---

[5] Citation is to the version of the regulation in effect at the time the ALJ issued her decision, 10 June 2010.

opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 404.1527(f)(2)(ii).

Similarly, the opinions of physicians and psychologist who examine a claimant are generally entitled to more weight than those of physicians and psychologists who did not perform an examination. *See* 20 C.F.R. § 404.1527(d)(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (2 July 1996). The weight ultimately attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. § 404.1527(f). In addition, if applicable, the status of the nonexamining source as a state agency medical consultant or medical expert used by the Commissioner is to be considered. *Id.* Unless the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. *Id.* § 404.1527(f)(2)(ii). Notably, however, opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See id.* § 404.1527(e); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, *5 (2 July 1996).

## 2. Dr. Rudyk

As noted, Dr. Rudyk was plaintiff's treating physician beginning in February 2007. Tr. 195-205, 247-307. In a letter to the DDS dated 12 December 2007, Dr. Rudyk states that she is seeing plaintiff for depression, osteoarthritis, chronic pain and fatigue, and fibromyalgia; that plaintiff continues to have significant pain despite multiple treatments for it; and that as a result of the pain and her underlying condition, plaintiff has multiple functional limitations, including the need to avoid any sitting, standing, or walking for long periods of time, and any lifting or carrying. Tr. 316. In a declaration dated 23 September 2009, Dr. Rudyk opines that these same

restrictions—as well as the need to lie down at unpredictable intervals throughout the day—would have applied back to August 2005 because her lumbar degeneration and failed back syndrome have remained constant since that time. Tr. 370-71. Dr. Rudyk concludes that plaintiff has been unable to work since 2005 due to her limitations. Tr. 371. The ALJ gave little weight to Dr. Rudyk's opinions. Tr. 26 ¶ 5. Plaintiff argues that the ALJ erred in doing so. The court does not agree that the ALJ erred.

The ALJ cited two reasons for her attribution of little weight to Dr. Rudyk's opinions. First, she notes that Dr. Rudyk did not begin treating plaintiff until February 2007, well after plaintiff's last date insured of 30 September 2006. Tr. 26 ¶ 5. Indeed, Dr. Rudyk admits in her 12 December 2007 letter that her treatment of plaintiff began in February 2007, as pointed out by the ALJ, and Dr. Rudyk's treatment notes confirm that fact.[6] Tr. 26 ¶ 5, 196.

Although plaintiff contends that the commencement of Dr. Rudyk's treatment of plaintiff in February 2007 is not a valid basis for attributing little weight to Dr. Rudyk's opinions, it most definitively is. The fact that Dr. Rudyk had no relationship with plaintiff until February 2007 means that she obtained no first-hand knowledge of plaintiff, her condition, or her associated limitations during the period of alleged disability, not even as a nontreating examiner. Instead, she must necessarily rely on records of others relating to this period. In effect, as to this period, Dr. Rudyk's status is more like that of a nonexamining reviewer than a treating physician. Under the principles embodied in the Regulations, this absence of any relationship at all by Dr. Rudyk with plaintiff during the relevant period diminishes the weight to which her opinions as to plaintiff's condition during this period are entitled. *See* 20 C.F.R. § 404.1527(d)(1), (2).

---

[6] In her 12 December 2007 letter, Dr. Rudyk states that she began treating plaintiff on 2 February 2007 (Tr. 316), but her declaration states that the treatment began on 7 February 2007 (Tr. 368), the accuracy of which is confirmed by Dr. Rudyk's office notes (*see* Tr. 196).

Second, the ALJ explained that Dr. Rudyk's opinion that plaintiff has been unable to work since 2005 is not supported by the medical evidence. Tr. 26 ¶ 5. This determination follows and is supported by the ALJ's comprehensive review of the medical evidence. Tr. 25-26 ¶ 5. As this review of the medical evidence indicates, substantial evidence of record supports the ALJ's assessment of Dr. Rudyk's opinion.

The court has previously addressed plaintiff's mental impairments. With respect to her orthopaedic impairments, as the ALJ references, plaintiff saw orthopaedist Mark D. Foster, M.D. on 9 August 2005 complaining of abnormal sensations over her right anterior thigh and tenderness over the right post-lateral buttocks. Tr. 26 ¶ 5; 189. Dr. Foster prescribed Zonegran and other medication. Tr. 188. An MRI performed at his direction on 21 August 2005 showed changes to plaintiff's lumbrosacral spine post-dating a prior back surgery she had and several degenerative changes to her spine. Tr. 26 ¶ 5; 181, 186. At a follow-up visit on 31 August 2005, to which the ALJ also alludes, plaintiff reported that her overall symptoms were getting better and the Zonegran was working. Tr. 26 ¶ 5; 187 (patient questionnaire). The only other record from Dr. Foster is an office visit note dated a year later, 31 August 2006, describing plaintiff's condition much as she described it at the 31 August 2005 visit.[7] Tr. 186.

The other physician plaintiff saw during the relevant period for her orthopedic problems was Dr. Wall, whose treatment of plaintiff the ALJ also describes in her decision. *See* Tr. 26 ¶ 5; 268-82. In plaintiff's initial visit with Dr. Wall on 6 December 2005, he prescribed physical therapy and an injection to help alleviate nerve pain. Tr. 282. She subsequently received in December 2005 and January 2006 a total of three injections, two for left leg pain and one for

---

[7] It appears possible, if not likely, that this note was misdated and actually relates to plaintiff's visit on 31 August 2005.

right leg pain.[8]  Tr. 278-79, 274-75, 270-71.  In her apparently last visit, on 17 February 2006, plaintiff reported that she was very pleased with the improvement in her symptoms, although she said that she continued to have left thigh pain and that her pain continued to restrict her from many activities of daily living.  Tr. 268; *see* Tr. 26 ¶ 5.  Dr. Wall also made a number of relatively benign findings:

> Patient is sitting comfortably in the chair. Does not seem to have any difficulties with positional changes or rising out of the chair. Gait is antalgic and favoring the right leg; without any assistive device. Motor and sensory exams are intact.

Tr. 269.  He prescribed a medication, Neurontin, for plaintiff's remaining radicular (*i.e.*, radiating nerve pain) symptoms.  Tr. 269.  Although he noted for plaintiff to come back in two months for a follow-up visit, there is no record that plaintiff returned.  Tr. 269.

Thus, as the ALJ noted, plaintiff had a relatively conservative course of treatment for her orthopaedic problems (and otherwise) during the relevant period.  Tr. 26 ¶ 5.  The treatment she did receive showed significant success in alleviating her pain.  Neither Dr. Foster nor Dr. Wall found that plaintiff's condition deprived her of the capacity to perform work activities during this period.

Plaintiff cites specifically to her reports to Dr. Wall of the limiting effects of her pain on her activities of daily living.  But the findings by Dr. Wall, the treatment he prescribed, and the improvement resulting from such treatment support the ALJ's determination that plaintiff's symptoms were not as limiting during the relevant period as she alleged.

With respect to the fibromyalgia for which Dr. Rudyk was treating plaintiff, it was not even diagnosed until after the relevant period, in February 2007.  Tr. 193.  Dr. Rudyk's treatment notes also indicate that it, too, responded well to treatment.  Tr. 337 (11 Dec. 2007; "Pain and

---

[8] The injections were administered by Patrick Boylan, M.D., also with Coastal Rehabilitation Medicine Associates, P.A.

fibromyalgia are significantly improved."); 349 (23 Sep. 2008; "Fibromyalgia. Currently doing well.").

Additional medical evidence that supports the ALJ's attribution of little weight to Dr. Rudyk's opinion that plaintiff has been unable to work since 2005 is the assessment of plaintiff's physical RFC by the nonexamining consulting DDS physicians. (The court has already discussed the consultative assessment regarding plaintiff's mental condition.) The physical RFC assessment completed on 23 May 2007 by DDS consulting physician Joel Dascal, M.D. found that during the relevant period plaintiff was capable of work at the medium exertional level, subject to occasional stooping and crouching. Tr. 208-09; *see* Tr. 312. In a report dated 13 July 2007, DDS consulting physician Murray J. Gilman, M.D. indicated his concurrence with this evaluation. Tr. 246. As indicated, the ALJ gave great weight to the consultants' assessments. Tr. 26 ¶ 5.

Dr. Rudyk's opinion that plaintiff was unable to work since 2005 due to her impairments also suffers from the deficiency that it is on an issue reserved to the Commissioner. It is therefore not entitled to any special weight due to its source. *See* 20 C.F.R. § 404.1527(e); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, *5.

The court concludes that the ALJ's attribution of little weight to Dr. Rudyk's opinions is supported by substantial evidence of record and conforms to the applicable legal standard. The court accordingly rejects plaintiff's challenge to this portion of the ALJ's decision.

### 3.    DDS Medical Consultants

Plaintiff contends that the ALJ erred in giving "significant weight" to the opinions of the nonexamining consulting DDS medical personnel. Tr. 26 ¶ 5. The medical evidence reviewed above shows that the ALJ's determination is supported by substantial evidence. The

determination also manifestly conforms to applicable law. Plaintiff's challenge to this portion of the ALJ's decision therefore also fails.

### E.    Assessment of Plaintiff's Credibility

Plaintiff contends that the ALJ did not properly evaluate the credibility of her allegations of limitations arising from her impairments, which she contends are disabling. The ALJ found the allegations not to be fully credible. Tr. 25 ¶ 5; 26 ¶ 5. The court finds that the ALJ committed no error.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.* at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "grounded in the evidence." *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4 (2 July 1996)); *see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of claimant's pain and other symptoms).

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause some of her alleged symptoms." Tr. 25 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 25 ¶ 5. She stated that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 25 ¶ 5. She

also stated that she "cannot find [plaintiff's] allegation that she was unable to perform all work activity prior to the last date insured to be credible." Tr. 26 ¶ 5.

The ALJ provided specific reasons for her credibility determination. Tr. 25 ¶ 5; 26 ¶ 5. She explained that "while the claimant is significantly limited and suffering from multiple medical conditions currently, the medical evidence of record does not support a finding that the claimant could not perform work-related activity before her date last insured." Tr. 25 ¶ 5. She cites specifically to plaintiff's relatively conservative course of treatment during the relevant period. Tr. 26 ¶ 5. As the prior discussion of the medical evidence indicates, these reasons are supported by substantial evidence of record.

Plaintiff contends that the reasons advanced by the ALJ are legally insufficient. For example, she argues that the ALJ should have fully credited plaintiff's daughter's testimony concerning plaintiff's limited activities of daily living. The ALJ explained, though, that she accorded it only minimal weight since it was "inconcistent [sic] with [plaintiff's] presentation upon routine examination and minimal treatment records from her insured period." Tr. 25 ¶ 5. The ALJ further noted that as plaintiff's daughter, she would be motivated to give the most supportive testimony possible in an effort to help plaintiff secure benefits. Tr. 25 ¶ 5. Substantial evidence plainly supports this analysis by the ALJ.

Plaintiff also argues that the ALJ disregarded her own testimony that she was unable to perform household chores. But the ALJ expressly refers to this testimony and manifestly considered it among plaintiff's other allegations regarding her limitations. Tr. 25 ¶ 5. The ALJ's determination not to treat this particular testimony as fully credible is lawful for the same reasons her credibility determination as a whole is.

Notwithstanding plaintiff's contentions, the ALJ's RFC determination does reflect the physical limitations about which plaintiff complained. Indeed, although the nonexamining consulting DDS physicians found plaintiff able to perform work at the medium exertional level during the relevant period and the ALJ gave this assessment significant weight, the ALJ found plaintiff capable of work at only the light exertional level. The court concludes that the ALJ's determination of plaintiff's credibility is supported by substantial evidence and conforms to the applicable legal standards. Plaintiff's challenge to it is therefore meritless.

**F.      RFC Determination**

Plaintiff contends that as a result of the purported flaws in the ALJ's evaluation of plaintiff's mental impairments, assessment of the medical opinion evidence, and credibility determination, the ALJ's RFC determination is erroneous. As discussed, plaintiff's challenges to these aspects of the ALJ's decision are meritless. Plaintiff's challenge to the RFC determination therefore also fails. The ALJ's RFC determination is supported by substantial evidence of record and is based on applicable legal standards.

**G.      Past Relevant Work**

Finally, plaintiff contends that the ALJ incorrectly determined at step four that plaintiff could return to her past relevant work as an executive director, office manager, and sales attendant. The court disagrees.

Plaintiff argues, in part, that the ALJ was required by Social Security Ruling 82-62, 1982 WL 31386 (1982) to make findings regarding the demands and functions of the past relevant work. She relies on the provision of Social Security Rule 82-62 stating that, "[i]n finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact: . . . 2. A finding of fact as to

the physical and mental demands of the past job/occupation." Soc. Sec. R. 82-62, 1982 WL 31386, at *4. But in 2003, the pertinent Regulation, 20 C.F.R. § 404.1520, was amended to permit reliance on the testimony of a vocational expert in determining whether a claimant is able to perform his past relevant work. *See* 68 F.R. 51153, 2003 WL 22001943 (26 Aug. 2003) (adding (b)(2) to 20 C.F.R. § 404.1520). The relevant provision reads:

> We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1520(b)(2). Thus, an ALJ may properly rely on the testimony of a vocational expert in lieu of himself describing the physical and mental demands of the past job, as the ALJ did here. *See, e.g., Lybrand v. Astrue*, No. 3:10-2293-JFA-JRM, 2012 WL 762092, at *4 (D.S.C. 8 Feb. 2012) (mag. judge rept. and recommendation), *adopted*, 2012 WL 762088 (7 Mar. 2012).

Plaintiff also contends that the ALJ erred by not considering that plaintiff was fired from her job as office manager due to the inability to perform it adequately. *See* Tr. 37, 47. As indicated, however, the vocational expert, who was present during the testimony that plaintiff had been fired, opined that plaintiff had the ability to perform the job of office manager as defined under the *DOT*, that is, as generally performed in the national economy. Tr. 30, 52. The ability to do so was sufficient under the plain terms of 20 C.F.R. § 404.1520(b)(2) to show that plaintiff could perform her past relevant work; it was not essential that the evidence show or the ALJ find that plaintiff could perform the job of office manager as she actually performed it. *See Pittman v. Astrue,* No. 6:11–852–MBS–KFM, 2012 WL 1969328, at *2 (D.S.C. 10 May 2012) ("A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work

as it is customarily performed in the economy or as the claimant actually performed the work.") (citing Soc. Sec. R. 82–62)).

The court concludes that the ALJ's determination at step four that plaintiff could perform past relevant work is supported by substantial evidence and based on the applicable legal standards. Plaintiff's challenge to this determination is therefore without merit.

## III. CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is supported by substantial evidence and conforms to the applicable legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 22nd day of June 2012.

James E. Gates
United States Magistrate Judge